UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN JENKINS, *et al.*,<br><br>        Plaintiffs,<br><br>  v.<br><br>MOD.COM,<br>        Defendant.<br>_____/ | No. C-07-3112 JSW (EMC)<br><br>**ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE**<br><br>**(Docket No. 23)** |

    Plaintiffs Ann Jenkins and Ernest F. Jenkins, Jr. ("Plaintiffs") have filed suit against in rem Defendant MOD.COM (the "Disputed Domain" or "in rem Defendant") for cybersquatting under section 43(d) of the Lanham Act. *See* 15 U.S.C. § 1125(d)(2)(A). According to Plaintiffs, either they or their predecessors-in-interest were the registrants of the Disputed Domain MOD.COM from 1994 through January 19, 2007. *See* Compl. ¶ 17. On January 19, 2007, an unknown party accessed Plaintiffs' account with the domain name registrar Network Solutions and transferred the Disputed Domain to another domain name registrar without Plaintiff's authorization or consent. *See id.* ¶ 18. Either at the time of this unauthorized transfer or through a subsequent transfer, the Disputed Domain was obtained by the current registrant of MOD.COM, Mortgages on Demand Limited ("Mortgages on Demand"), which has its principal place of business in Great Britain. *See id.* ¶ 9, 19. Mortgages on Demand currently uses the Disputed Domain to generate affiliate revenue from pay-per-click advertisements. *See id.* ¶ 21.

    After MOD.COM failed to respond to the complaint, default was entered, and Plaintiffs moved for default judgment. Plaintiffs' motion was referred to the undersigned for a report and recommendation. *See* Docket No. 27. Having considered Plaintiffs' motion for default judgment

and accompanying submissions, the Court hereby orders that Plaintiffs provide supplemental briefing and/or evidence in support of their motion, as discussed below.

## I. DISCUSSION

Federal Rule of Civil Procedure 55 governs default judgments. *See* Fed. R. Civ. P. 55; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). A court has discretion to enter a default judgment as it deems appropriate. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one."). In the Ninth Circuit, a court considers the following factors in determining whether a default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

In their motion for default judgment, Plaintiffs have failed to discuss any of the *Eitel* factors. While this does not preclude a default judgment in favor of Plaintiffs, the Court has, at this juncture, concerns about the second and third *Eitel* factors, which require an evaluation of whether Plaintiffs have adequately stated a claim for relief. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (noting that, under the second and third *Eitel* factors, a court evaluates whether a plaintiff has adequately stated a claim on which he or she may recover).

As noted above, Plaintiffs assert in their complaint an in rem claim for cybersquatting under section 43(d) of the Lanham Act. *See* 15 U.S.C. § 1125(d)(2)(A). That statute provides in relevant part as follows:

> The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if --
>
> (I)   the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section . . . .

*Id.* Thus, pursuant to the statute, in order for Plaintiffs to have a cognizable claim, they must adequately state a claim that the Disputed Domain MOD.COM violates their right to a mark registered in the PTO or a mark protected under subsection (a) or (c) of § 1125. *See Continental Airlines, Inc. v. Continentalairlines.com*, 390 F. Supp. 2d 501, 506-07 (E.D. Va. 2005) (discussing standard for plaintiff to prevail on summary judgment in ACPA in rem suit). Because Plaintiffs have not alleged in their complaint that (1) they registered the MOD trademark in the PTO or that (2) the mars MOD is entitled to protection from dilution as "famous and distinctive" under § 1125(c), the only question is whether Plaintiffs have adequately alleged that the mark is protected under § 1125(a), which governs infringement of unregistered marks. *See id.* at 507; *see also* 4 McCarthy on Trademarks & Unfair Competition § 25:79 (4th ed. 2008).

The core element of trademark infringement under § 1125(a) is whether the similarity of the marks is likely to confuse customers about the source of the products. *See Ambercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). The Ninth Circuit applies the eight-factor *Sleekcraft* test to analyze the likelihood of confusion in trademark infringement cases. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979) (abrogated in part on other grounds as recognized by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)); *see also Jada Toys, Inc. v. Mattel, Inc.*, No. 05-55627, 2008 U.S. App. LEXIS 3627, at *5-6 (9th Cir. Feb. 21, 2008); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-03 (9th Cir. 2007); *Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d 946, 963-64 (C.D. Cal. 2004). The eight factors are: (1) the strength of the mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See Sleekcraft*, 599 F.2d 341, 348-4.

In order to evaluate Plaintiffs' § 1125(a) claim with respect to the *Sleekcraft* factors, the Court needs additional information. For example, to evaluate the strength of the mark, this Court needs to know more about the mark MOD, including how it originated, whether it is descriptive of the goods and services offered by Plaintiffs, and why customers associate the mark with Plaintiffs'

goods and services.[1] The stronger the mark, the greater the likelihood that Mortgages on Demand is attempting to take advantage of Plaintiffs' business goodwill and customer traffic by using the Disputed Domain. *See Garden of Life*, 318 F. Supp. 2d at 967 (finding that plaintiff's "Garden of Life" mark was a strong mark entitled to a high level of protection and that defendants' ownership of www.gardenoflife.com and their use of plaintiff's mark on that site caused customer confusion). On the other hand, if the mark is weak, the use of the Disputed Domain may not be infringing, especially taking into account that the goods and services offered by Mortgages on Demand on the MOD.COM website are completely unrelated to Plaintiffs' business. *See Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d at 946, 949 (denying transfer of domain name www.epix.com to plaintiff company named Epix where EPIX mark was weak, plaintiff had no exclusive claim to the trademark, and the goods and services offered by the defendant site www.epix.com were unrelated to plaintiff's business except in incidental and minimal ways).

The Court notes that it is not unsympathetic to Plaintiffs' position. Plaintiffs allege -- and the Court must accept as true given the entry of default -- that their domain name was stolen, and they seek only limited relief, *i.e.*, the return of the stolen domain name. But for purposes of the Lanham Act, a plaintiff bringing an in rem action against a domain name must show that its mark is either registered or protected under § 1125(a) or (c) before it is entitled to such a remedy.[2] While, under

---

[1] In their complaint, Plaintiffs allege that they have used the mark continuously and in the same manner since 1994 on the internet website advertising their services, which was visited by "thousands" of internet users each month. *See* Compl. ¶¶ 3, 16-17. However, it is unclear how the mark was used on the internet or in business other than as the domain name.

Furthermore, it appears that Plaintiffs do not have exclusive rights to the MOD mark, as the owner of an inherently distinctive trademark such as XEROX or KODAK might. *See Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 943 n.6 (9th Cir. 2002). The mark MOD seems to be used by other companies, several of whom have registered their mark with the United States Trademark and Patent Office. Plaintiffs have not explained why customers would associate a commonly used mark with their business only. *See id.* at 945-46 (finding EPIX mark was weak where company had no exclusive claim to the trademark, "at least eight companies have registered the EPIX mark of a close variation with the PTO", and use of the mark on the internet was widespread).

[2] Absent a mark protected under § 1125(a), Plaintiffs might have a claim for conversion against Mortgages on Demand, but not a claim in rem for cybersquatting against the Disputed Domain. *See Express Media Group, LLC v. Express Corp.*, No. C06-03504 WHA, 2007 WL 1394163 at *3-4 (N.D. Cal. May 10, 2007) (granting summary judgment to plaintiffs on conversion claim where plaintiffs "presented evidence they had actual title to the domain name and immediate right to possess it" and that defendants "committed a wrongful act in retaining possession of the domain name" even if defendants

4

the *Sleekcraft* test, the intent of the defendant in selecting the mark is a factor to consider, Plaintiffs have not specifically alleged that it was Mortgages on Demand that stole the domain name; rather, the allegation is simply that an unknown person stole the domain name. *See* Compl. ¶ 18. With respect to Mortgages on Demand's intent, arguably, it had nothing to do with capitalizing on Plaintiffs' good will or trademark rights. Given that the advertising links on the MOD.COM website are all related to the military and that Mortgages on Demand has its principal place of business in Great Britain, *see id.* ¶ 9; Calpotura Decl. ¶ 14, it is plausible that Mortgages on Demand selected the MOD.COM domain name because MOD is an acronym for the United Kingdom's Ministry of Defence.

## II. CONCLUSION

For the foregoing reasons, the Court orders that Plaintiffs provide supplemental briefing and/or evidence to support their contention that the mark MOD is entitled to trademark protection under 15 U.S.C. § 1125(a). The supplemental papers shall be filed within one week of the date of this order.

Dated: April 2, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

---

claimed they had validly obtained the domain name from a third party).