**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Cal. Bar No. 226112)
Jeffrey M. Rosenfeld (Cal. Bar No. 222187)
Deepa Krishnan (Cal. Bar No. 228664)
Margarita Calpotura (Cal. Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Plaintiffs
ANN JENKINS and ERNEST F. JENKINS, JR.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANN JENKINS,** an individual, and **ERNEST F. JENKINS, JR.,** an individual,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>**TUCOWS, INC.**, a Pennsylvania corporation,<br><br>　　　　Defendant. | Case No. C07-03112 JSW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TUCOWS, INC.'S MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>[Declaration of Deepa Krishnan in Support Thereof Filed Concurrently Herewith]<br><br>DATE:　July 18, 2008<br>TIME:　9:00 a.m.<br>CTRM:　2 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ....................................................................................................... 1

    A. Tucows Is a Publicly-Traded, Multi-National Corporation Which Offers An Array of Internet Services, Most Importantly Serving as a Domain Name Registrar ............................................................................................................. 1

    B. Tucows Relies on Its Business Partners in California ..................................... 2

    C. The Bulk of Tucows' Property Is Located in California ................................... 3

    D. A Large Portion of Tucows' Customers Are in California ............................... 3

    E. The Stolen Domain Name is Located in California ......................................... 4

    F. Tucows Consented to the Jurisdiction of the Court ......................................... 4

III. LEGAL STANDARD .............................................................................................. 5

IV. DISCUSSION ......................................................................................................... 5

    A. When Minimum Contacts Are Present, Plaintiff Has Satisfied Due Process Considerations for the Court's Exercise of General Jurisdiction ....................... 5

        1. Virtually All of Plaintiff's Allegations Regarding Jurisdiction are Uncontroverted by Defendant's Declaration ......................................... 6

        2. Moreover, A Review of Internet Search Results and Defendant's Public Filings Reveal That Defendant Purposefully Availed Itself of This State's Resources ................................................................................. 7

    B. Even Without Systematic and Continuous Contacts, A Court Can Exercise Specific Jurisdiction in Cases Such as The One at Bar ................................... 7

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

C. Defendant Should Have Foreseen Being Haled into Court in California .......... 8

D. Tucows Submission of a "Registrar's Certificate" to the Court Constitutes a General Appearance or Other Act Not Related to a Jurisdictional Challenge and Thus Tucows Has Consented to the Jurisdiction of this Court ............... 10

V. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

*Bancroft & Master, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ...... 6, 7

*Calder v. Jones*, 465 U.S. 783, 790 (1984) .................................................................. 8

*California Dental Assn. v. American Dental Assn.*, 23 Cal.3d 346, 351-352 (1979) ...... 10

*Creed v. Schultz*, 148 Cal.App.3d 733, 740 (1983) ....................................................... 10

*Data Disc., Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).................................................................................................................. 8

*Doe, I v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ..................................................... 5

*Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)........ 5

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ...................................................................................................... 5

*Neihaus v. Superior Court*, 69 Cal.App.3d 340, 345 (1977) .......................................... 10

*Office Depot, Inc. v. Zuccarini, Case No. 06-80356*, slip. op., 2007 WL 2688460, *4 (N.D. Cal. Sept. 10, 2007).................................................................................. 4, 8

*Sanchez v. Superior Court*, 203 Cal.App.3d 1391, 1397 (1988) ................................... 10

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) .................. 6

*U.S. v. Swiss American Bank, Ltd.*, 191 F. 3d 30, 37 (1999)......................................... 8

## OTHER AUTHORITIES

4 Am. Jur. 2d Appearance § 2................................................................................... 10

**I.**

**INTRODUCTION**

Defendant Tucows, Inc. ("Defendant" or "Tucows"), despite routinely touting itself as a publicly-traded multi-national Internet company, now seeks to disclaim its relationship with California, one of its largest Internet markets. Defendant pitches to California clientele, partners with California businesses, attends conferences and advertises here, and houses most of its property in this State. Notably, in its declaration supporting its Motion to Dismiss ("Decl. ISO Motion to Dismiss"), Defendant does not deny any of the foregoing. It does not and cannot disclaim its California presence – instead, it merely seeks to distinguish its domain name registrar services from its other lines of business, clearly tied to California.

However, under the principles of general jurisdiction, Defendant's numerous, continuous contacts with this State subject it to the Court's powers, even assuming those contacts are disconnected from the alleged claims. Moreover, this particular case revolves around a domain name which is itself located in this District. Therefore, under specific jurisdiction principles as well, the Court has jurisdiction over Defendant. Defendant cannot avail itself of the benefits of this State, and then seek to disclaim the responsibilities that come therewith. And lastly, Defendant has consented to the jurisdiction of the Court by submitting a "registrar's certificate" to the Court, which states that the Defendant will abide by the directions of the Court. For the reasons set forth more fully herein, Defendant's motion should be denied.

**II.**

**BACKGROUND**

**A.   Tucows Is a Publicly-Traded, Multi-National Corporation Which Offers An Array of Internet Services, Most Importantly Serving as a Domain Name Registrar.**

Tucows is the domain name registrar for the domain name at issue in this action, <MOD.COM>. (FAC ¶¶31, 39.) In fact, Tucows is one of the oldest recognized domain

Case No. C07-03112 JSW                                                                 1                                                                 **OPPOSITION TO MOTION TO DISMISS**

name registrars, accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN") over nine years ago. (Declaration of Deepa Krishnan in Support of Plaintiffs' Opposition to Defendant Tucows, Inc.'s Motion to Dismiss for Lack of Jurisdiction ("Krishnan Decl.") ¶2 & Ex. "A".)  It provides domain names to resellers and retailers alike, and maintains at least 150,000 domain names in its private portfolio.  (*Id*.) It is the fourth largest domain name registrar worldwide, controlling over 6,000,000 domains. (Krishnan Decl. ¶7 & Ex. "H".)  It relies on its over 9,000 business partners and affiliates in over 100 countries to service its clients.  (Krishnan Decl. ¶2 & Ex. "A".)  For example, "P.Sato", a California-based company, is one of Tucows' partners that offers Tucows' OpenSRS and domain name registration services, which are the backbone of Tucows' reseller business.  (Krishnan Decl. ¶¶8, 11 & Exs. "J", "K", "N".)

**B.     Tucows Relies on Its Business Partners in California.**

In addition to maintaining an interactive website at Tucows.com, presumably used by California consumers ("[s]ince 1993, Tucows.com has been one of the most popular directories of over 40,000 shareware, freeware, and demo software packages available over the internet…[t]he site is heavily community-centric offering visitors the ability to rate and review software and solutions found on the site")(Krishnan Decl. ¶2 & Ex. "A"; FAC ¶8), Tucows relies upon its partnerships in California to run its business.

For example, at least some of Tucows' resellers are based in this State (see subsection "A" above), and in 2006 Tucows acquired the hosted messaging assets of the California company, Critical Path, for over $6,000,000.  (Krishnan Decl. ¶2 & Exs. "A", "C".)  Likewise, in 2002, Tucows partnered with the California-based "Rodopi Software" to "provide an integrated solution based on Tucows' OpenSRS domain registration platform and Rodopi's billing software", suggesting that Tucows' billing takes place in California. (Krishnan Decl. ¶9 & Ex. "L".)  Tucows also appears to have a contractual-based relationship or partnership with "VPOP Technologies," yet another California-based company which claims to have "revolutionized the domain registration industry" by

creating "both the server and client applications associated with OpenSRS," Tucows' valued domain registration program. (Krishnan Decl. ¶10 & Ex. "M".)

C.  **The Bulk of Tucows' Property Is Located in California.**

As an Internet-based company, Tucows relies on intangible assets, and owns no real property. (Krishnan Decl. ¶2 & Ex. "A".) However, "[s]ubstantially all of [its] computer and communications hardware is located at [its] facilities or at server hosting facilities in Toronto, Ontario, San Jose, San Francisco and Santa Clara, California, Denver, Colorado and London, England." (*Id.*) In other words, all the property Tucows claims to own are in six cities, three of which are in California. Thus, in its declaration supporting its Motion to Dismiss, Tucows cannot help but admit that it uses California-based data centers and servers for at least one of its business lines. (Decl. ISO of Motion to Dismiss ¶11.)

Indeed, just recently, in May of this year, Tucows paid close to $1,000,000 to acquire a domain name portfolio from "Portfolio Brains, LLC", a California-based limited-liability company (Krishnan Decl. ¶2 & Ex. "B"), suggesting that Tucows' presence in the State is only expanding. Likewise, as stated in subsection "A" above, Tucows claims to privately possess about 150,000 domain names in its portfolio. These domains, so long as they are ".com" or ".net" names, reside in California, as the domain name registry, VeriSign, Inc., is located here. See subsection "E" below. Moreover, Tucows' property is encumbered by a tax lien in California (Krishnan Decl. ¶12 & Ex. "O"), again further evidencing Defendant's systematic contacts in this State.

D.  **A Large Portion of Tucows' Customers Are in California.**

While Plaintiff cannot, without discovery, verify that the majority of Tucows' customers are California residents, a search of the WHOIS database suggests that a substantial portion of Tucows' worldwide customer base is concentrated in California. Specifically, 456,038 WHOIS registrant records tie Tucows to California. (Krishnan Decl. ¶7 & Ex. "I".) Tucows holds at least 6,000,000 domain names. (Krishnan Decl. ¶7 & Ex.

1  "H".)  Thus, approximately 7.6% of Tucows' domains appear to be held by California
2  residents, a proportionately high number given Tucows' worldwide presence.  Moreover,
3  Tucows has appeared, and in fact advertised its appearance, in Internet conferences
4  both this year and last year, in Hollywood and San Jose, California. (Krishnan Decl. ¶13
5  & Ex. "P".)  On its website it advertises its presence at these conferences, inviting
6  potential customers to "[c]ome on over, get to know both us and our services" and
7  offering to give away free "t-shirts" and "squishy cows" for those who visit Tucows' booth.
8        Given the nature of Tucows' business, the fact that Tucows attends conferences
9  in California to generate clientele, and given that California is the United States' largest
10 Internet-using market (Krishnan Decl. ¶14 & Ex. "Q"), it is not surprising why so many
11 customers are in California, and accordingly why much of Tucows' revenue likely comes
12 from the same.

14 **E.   The Stolen Domain Name is Located in California.**

15        The allegations in this action concern the valuable domain name, <MOD.COM>.
16 (FAC ¶7.) The official domain name registry for ".com" domains is VeriSign, Inc.
17 ("VeriSign"), which is reflected in the ".Com Registry Agreement" between the Internet
18 Corporation for Assigned Names and Numbers ("ICANN") and VeriSign.  (Krishnan Decl.
19 ¶3 & Ex. "D".)  VeriSign is clearly located in the District, as evidenced by data on the
20 California Secretary of State's website and from VeriSign's own website, both of which
21 reflect that VeriSign is located in Mountain View, California.   (Krishnan Decl. ¶¶4-5 &
22 Exs. "E"-"F".) This Court has held that domain names exist in the location of the registry.
23 *Office Depot, Inc. v. Zuccarini,* Case No. 06-80356, slip. op., 2007 WL 2688460, *4 (N.D.
24 Cal. Sept. 10, 2007).  Accordingly, the domain name at issue resides in this District.

26 **F.   Tucows Consented to the Jurisdiction of the Court.**

27        Tucows has consented to the jurisdiction of the Court due to a signed declaration
28 submitted on July 12, 2007, wherein Tucows transferred effective dominion and control

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

over the <MOD.COM> domain name to the Court, and wherein Tucows specifically stated that it would abide by any order of the Court regarding disposition of the domain name. (Dckt. 6-2.) Specifically, Tucows stated that, "[f]urthermore, Tucows will not modify the status of the domain name MOD.COM unless and until instructed to do so by Order of the court in the instant case. Therefore, the MOD.COM domain name should be construed to be under the dominion and control of the court until such time as Tucows receives further instruction with regard to the MOD.COM domain name." (*Id.* ¶¶7-8.)

### III.

### LEGAL STANDARD

When a defendant's motion to dismiss is made as its initial response, and the court decides the motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing that personal jurisdiction exists, and the plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)(citations omitted). Furthermore, unless directly contravened, the plaintiff's version of the facts is taken as true and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Id.*, *quoting Doe, I v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)(quotations omitted).

### IV.

### DISCUSSION

**A.    When Minimum Contacts Are Present, Plaintiff Has Satisfied Due Process Considerations for the Court's Exercise of General Jurisdiction.**

Personal jurisdiction over a defendant is proper if it is permitted by the State's long-arm statute and the exercise of jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm statute is coextensive with federal due process requirements.

*Harris*, 328 F.3d at 1129.  Thus, the Court may exercise personal jurisdiction if a defendant has minimum contacts with California and it is reasonable to require the defendant to defend itself in California.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006).

Where a defendant conducts continuous and systematic business activities within the forum state, courts can exercise personal jurisdiction, regardless of where the claims at issue arose.  *See Tuazon*, 433 F.3d at 1169.  Courts consider the following factors in determining whether a defendant has conducted such systematic and continuous business activities: whether a defendant makes sales in the state, whether a defendant solicits or engages in business in the state, and whether the defendant benefits from the state's markets.  *See Bancroft & Master, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  These factors are elements in a non-exhaustive list, and it is the nature and extent of the contacts that determines whether they are "substantial" or "continuous and systematic."  *Tuazon*, 433 F.3d at 1172.  Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of a continuous and systematic presence.  *Id*.

### 1. Virtually All of Plaintiff's Allegations Regarding Jurisdiction are Uncontroverted by Defendant's Declaration.

While Defendant spends much time briefing the factual and procedural background of this case, it dedicates less than a page to facts or analysis showing why jurisdiction is improper in this case.  Defendant simply states that it has "no *registrar* employees….in…California" (Decl. ISO Motion to Dismiss, ¶6), that it has "no *registrar* infrastructure…in…California" (*Id*. at 8) and that its use of California-based data centers "is wholly unrelated to Tucows domain name *registrar* business." (*Id*. at 11)(emphasis added).  Other than the foregoing, there are no factual assertions in Defendant's declaration that directly or indirectly controvert any jurisdictional allegations in the FAC.  Even *within* the foregoing statements, Defendant is careful to limit its declaration with the

caveat, "registrar." In other words, Defendant nowhere denies that it has systematic and continuous contacts in California.

**2. Moreover, A Review of Internet Search Results and Defendant's Public Filings Reveal That Defendant Purposefully Availed Itself of This State's Resources.**

Defendant maintains a variety of Internet-oriented businesses, one of which is serving as a registrar, competing with the most well-known registrars, such as GoDaddy.com. (Krishnan Decl. ¶7 & Ex. "H".) To serve its various businesses, Defendant maintains a computer data center in California (Decl. ISO Motion to Dismiss ¶11), operates an interactive website soliciting customers from California (FAC ¶8), attends business conferences in California (Krishnan Decl. ¶13 & Ex. "P"), owns servers in California (Krishnan Decl. ¶2 & Ex. "C"), partners with resellers in California (Krishnan Decl. ¶2 & Ex. "A"), develops its key applications with businesses in California (Krishnan Decl. ¶10 & Ex. "M"), and seems to run its billing out of California. (Krishnan Decl. ¶9 & Ex. "L".) Moreover, Defendant paid almost $1,000,000.00 to acquire a domain portfolio of a California-based company (Krishnan Decl. ¶2 & Ex. "B") and claims to own 150,000 domain in its own portfolio (Krishnan Decl. ¶2 & Ex. "A"); any of those ".com" or "net" domains would reside in California. See subsection "B" below. Under *Bancroft* and its progeny, Tucows has made its presence more than known in this State, has benefited from this State's resources and customer base, and is subject to general jurisdiction here.

**B.  Even Without Systematic and Continuous Contacts, A Court Can Exercise Specific Jurisdiction in Cases Such as The One at Bar.**

Even if a defendant is not subject to general jurisdiction, a Court may exercise specific jurisdiction where the defendant does "some act or consummate[s] some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws," and the claim arises out of the defendant's forum-related

activities. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)(citations omitted). While Defendant's contacts are so pervasive and continuous that the exercise of general jurisdiction is appropriate, specific jurisdiction is also available in this action.

Specifically, this action revolves around the purported conversion of a domain name by a domain name registrar with knowledge that the ".com" domain was unlawfully acquired by its registrant. (*See generally*, FAC.) Domain name registrars of ".com" domains must interact with VeriSign, the applicable domain registry. This Court has held that domain names are located both where the registrar and registry are located. *Office Depot*, *infra*. Moreover, the alleged tortious activity took place in California, and thus jurisdiction is proper here[1]. *U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999)(For jurisdiction evaluation, "the legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place.").

### C. Defendant Should Have Foreseen Being Haled into Court in California.

Defendant is a domain name registrar – the fourth largest in the world. (Krishnan Decl. ¶7 & Ex. "H".) The source of its registrar status is an agreement with the California-based ICANN (*see* ¶6 & Ex. "G" to Krishnan Decl.), and this agreement specifically states that all disputes arising under the agreement will be adjudicated in California. Having served as an ICANN-accredited registrar since 1999 (Krishnan Decl. ¶2 & Ex. "A"), Defendant should have anticipated that it would litigate in this State. Likewise, being a domain name registrar, Defendant should have foreseen being haled into Court in the district where its primary property – i.e., its domains – is located.

---

[1] This action is akin, albeit not identical, to a line of defamation cases where the tort physically takes place outside the state but the "effect" is felt in California, and jurisdiction is found proper. E.g., in *Calder v. Jones*, 465 U.S. 783, 790 (1984), the Court held: "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Here, the alleged conversion concerned property located in California, and thus the effects of the intentional acts were felt in this State.

Case No. C07-03112 JSW          8          OPPOSITION TO MOTION TO DISMISS

Moreover, the alleged underlying action – the conversion or civil theft of Plaintiffs' domains (*see e.g.*, FAC ¶48) -- took place in this District, as the domain at issue is likewise located here. Tucows entered into multi-million dollar deals in this state (*see* ¶2 & Exs. "B"-"C" to Krishnan Decl.) – again, it should have realized that litigation could arise here. The above, coupled with Tucows' numerous business relationships, server and data-centers, and customers in this State, suggest that Defendant faces an uphill battle explaining why it could not reasonably foresee being haled into this Court – which is perhaps why Defendant does not bother making that argument, stating only that personal jurisdiction is inappropriate because: (1) "assuming, arguendo, that MOD.COM was somehow misappropriated from the Plaintiffs, the harm would have occurred in Massachusetts" and (2) previously, before amending the Complaint, Plaintiffs "relied upon the fact that the 'registrar….Tucows, Inc...[is] located in Canada." (Motion to Dismiss at 6.)

Even assuming Plaintiffs' allegations in its prior Complaint are relevant, Defendant confuses "location" with "subject to personal jurisdiction." Regardless of whether Tucows is located or headquartered in Canada, it can be, and is, subject to jurisdiction in California for all the reasons detailed above. Likewise, while Plaintiffs certainly could have brought this lawsuit in Massachusetts, the State of their residence, they are also certainly entitled to bring the lawsuit in California, where the *res* of the action is located, and where Defendant is subject to personal jurisdiction. Defendant has provided no evidence or argument in support of its bold assertion that jurisdiction is inappropriate, perhaps because it realizes it cannot, in good faith, present such evidence in the face of its stronghold in this State since at least 1999. Accordingly, Plaintiff's allegations must be taken as true, and the facts detailed in the Declaration attached hereto create, at the very least, a prima facie case that jurisdiction is appropriate. Accordingly, Defendant's motion should be denied.

### D. Tucows' Submission of a "Registrar's Certificate" to the Court Constitutes a General Appearance or Other Act Not Related to a Jurisdictional Challenge, and Thus Tucows Has Consented to the Jurisdiction of this Court.

Tucows submitted a signed declaration to the Court wherein Tucows transferred effective dominion and control over the <MOD.COM> domain name to the Court, and wherein Tucows specifically stated that they would abide by any order of the Court regarding disposition of the domain name. (Dckt. 6-2.) Specifically, Tucows stated that, "[f]urthermore, Tucows will not modify the status of the domain name MOD.COM unless and until instructed to do so by Order of the court in the instant case. Therefore, the MOD.COM domain name should be construed to be under the dominion and control of the court until such time as Tucows receives further instruction with regard to the MOD.COM domain name." (*Id.* ¶¶ 7-8.)

California courts can exercise personal jurisdiction over a non-resident defendant if that defendant voluntarily consents to the California court's jurisdiction. *Neihaus v. Superior Court*, 69 Cal.App.3d 340, 345 (1977). One way for a defendant to consent to jurisdiction is if the defendant makes a general appearance in a California action. A general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the court to proceed. It does not require any formal or technical act. *Sanchez v. Superior Court*, 203 Cal.App.3d 1391, 1397 (1988); *Creed v. Schultz*, 148 Cal.App.3d 733, 740 (1983). Furthermore, participation in the conduct of the litigation not directed to an adjudication of the disputed jurisdictional issue is itself consent to the suit. *California Dental Assn. v. American Dental Assn.*, 23 Cal.3d 346, 351-352 (1979); *see also*, 4 Am. Jur. 2d Appearance §2 ("A general appearance is made by a party who comes into court and appears in the case in any manner except specially for the specific purpose of challenging the jurisdiction of the court over the defendant's person.").

In the case at hand, Tucows recognized the authority of the Court when it stated that it would abide by orders of the Court and when it transferred dominion and control of the domain name to the Court. In addition, this sworn declaration by Tucows was not in

1 any way related to the personal jurisdiction of the Court over Tucows.  Furthermore, the act involved a formal declaration by Tucows, under penalty of perjury.  Tucows' sworn declaration, which was not related to jurisdiction, submitted to the Court is tantamount to testimony in front of the Court, wherein Tucows has submitted to potential sanctions and even criminal prosecution in the Northern District of California in the event of a misrepresentation in the declaration.  For the forgoing reasons, Tucows has consented to the jurisdiction of the Court.

## V.

## **CONCLUSION**

For all of the reasons set forth above, Defendant has purposefully availed itself of the benefits of California, and the exercise of personal jurisdiction by this Court is proper. Defendant's motion should be denied; alternatively, Plaintiffs should be permitted to conduct discovery to further assess the nature and extent of Defendant's contacts with California.

Respectfully Submitted,

DATED:  June 6, 2008

**KRONENBERGER BURGOYNE, LLP**

By: _____/s/_____
Deepa Krishnan
Attorneys for Plaintiffs ANN JENKINS
and ERNEST F. JENKINS, JR.