Bret A. Fausett (SNB 139420)
bfausett@adorno.com
ADORNO YOSS ALVARADO & SMITH
A Professional Corporation
633 W. Fifth Street, Suite 1150
Los Angeles, CA 90071
Tel.   (213) 229-2400
Fax.   (213) 229-2499

Attorneys for Defendant
TUCOWS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| ANN JENKINS, an individual, and ERNEST F. JENKINS, JR., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>TUCOWS, INC., a Pennsylvania corporation,<br><br>Defendant. | CASE No. C07-03112 JSW<br><br>JUDGE:   Jeffrey S. White<br><br>DEFENDANT TUCOWS, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION<br><br>DATE:   July 18, 2008<br>TIME:   9:00 a.m.<br>Courtroom:   2<br><br>Action Filed: June 13, 2007 |

## I. INTRODUCTION

In their Opposition to Defendant Tucows, Inc.'s ("Tucows'") motion to dismiss, Plaintiffs Ann Jenkins and Ernest F. Jenkins, Jr. ("Jenkins" or "Plaintiffs") provide this Court no legal basis on which to claim jurisdiction over this dispute. Plaintiffs are a Massachusetts couple seeking to assert superior title to a domain name currently registered to a non-party individual in the United Kingdom. Rather than assert their claim to title directly against the non-party to which the domain name is currently registered, however, Plaintiffs have chosen to proceed against Tucows, the domain name's Canadian registrar. In trying to justify why they have filed a state law tort claim in federal court in a venue 3000 miles from their home, Plaintiffs do not discuss, or even cite, the prior decision of this Court most directly applicable to the current facts: _Schwarzenegger v. Fred Martin Motor Co._, 372 F.3d 979 (9th Cir. 2004). Instead, they perfunctorily cite cases discussed and distinguished by _Schwarzenegger_, without regard to the facts or analyses in those cases, while dismissing their prior contrary arguments on jurisdiction in this very case.

Plaintiffs essentially make three claims: (1) that Tucows has such continuous and systemic contacts with California as to subject it to general jurisdiction, even for claims that arise elsewhere; (2) that the domain name at issue, MOD.COM, is somehow "located in California," and so subjects Tucows to specific jurisdiction in this Court; and (3) that, in spite of its motion to dismiss and vigorous objection to jurisdiction, Tucows actually has "consented" to jurisdiction in this Court. None of these claims are supported by either the law or the facts, and Tucows' motion to dismiss should be granted.

## II. ARGUMENT

### A. No General Jurisdiction

As this Court has written, general jurisdiction "in an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." _Schwarzenegger_, 374 F.3d at 801. Here, Tucows is a publicly traded company, incorporated in Pennsylvania, with a principal place of business in Toronto, Ontario. Its primary business line is the provisioning of wholesale Internet

1

services, such as email and domain name registration services, to Internet Services Providers ("ISPs"), who in turn resell these services to consumers. Some of Tucows' resellers and customers, without any connection to this dispute, are based in California. *See*, Supplemental Declaration of Adam Eisner in Support of Defendant Tucows, Inc., Motion to Dismiss for Lack of Personal Jurisdiction ("Suppl. Eisner Decl."), filed June 13, 2008, at ¶3. These customers come to Tucows; Tucows does not purchase any advertising in any media form, whether in print or on radio or television or online, that is specifically targeted to California consumers. *Id*., at ¶11. All of the resellers and domain name registrants who choose to do business with Tucows do so under a contract that mandates Ontario, Canada as the exclusive forum and Ontario law as the choice of law.[1] *Id*. at ¶5. As detailed in the Declaration of Adam Eisner in Support of Tucows' Motion to Dismiss ("First Eisner Decl."), filed May 21, 2008 (Docket No. 38), all of Tucows' operations supporting its domain name registrar operations, including its personnel and infrastructure, are located in Toronto, Ontario.

Contrary to the allegations made in Plaintiffs' Opposition that "The Bulk of Tucows' Property is Located in California" (Opposition, at 3), Tucows does not have *any* business operations in California. Suppl. Eisner Decl. at ¶7. Tucows has no employees in California (*Id*., at 8), no real property in California (*Id*. at 9), and no leased property in California (*Id*. at 10). Tucows has contracts with certain non-party Internet hosting companies to provide Tucows with outsourced Internet storage and bandwidth for its online operations. This out-sourced infrastructure is with the following companies in the following locations: Equinix, in Ashburn, Virginia (12 racks of

---

[1] For example, the standard registration agreement between Tucows and the domain name registrant of MOD.COM, Mortgages On Demand Limited, provides, at Paragraph 25: "GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF PROVINCE OF ONTARIO AND THE FEDERAL LAWS OF CANADA APPLICABLE THEREIN WITHOUT REFERENCE TO RULES GOVERNING CHOICE OF LAWS. ANY ACTION RELATING TO THIS AGREEMENT MUST BE BROUGHT IN ONTARIO AND YOU IRREVOCABLY CONSENT TO THE JURISDICTION OF SUCH COURTS." See, Tucows' Registration Agreement, at http://services.tucows.com/why/contracts/exhibita.htm (last reviewed on June 12, 2008; copies retained by counsel). Additional Tucows contracts, each of which also specifies Ontario law, are available at http://services.tucows.com/why/contracts/.

equipment / 80 units); Qwest, in Denver, Colorado (93 racks of equipment / 474 units); Q9, Brampton, Ontario (41 racks of equipment / 267 units); Telehouse, in London, UK (3 racks of equipment / 27 units); NavaSite, in San Jose, California (2 racks of equipment / 12 units); Savvis, in Santa Clara, California (1 Rack / 10 units); and JMA, in San Francisco, California (0 racks / no equipment). The small percentage of outsourced hosting that is based in California supports operations unrelated to Tucows domain name registration business. Moreover, as detailed more fully in Section II.B., *infra*, Tucows' domain name registrations do not have a physical presence in California.

Although Plaintiffs ignore it completely, Schwarzenegger is on point. In Schwarzenegger, the Plaintiff tried to aggregate a similar set of California contacts to establish general jurisdiction. Governor Schwarzenegger contended that the Defendant automobile dealer imported foreign-made cars through California importers, under import contracts that specified California choice of law. Schwarzenegger, 374 F.3d at 801. He also claimed that the Defendant used a California-based direct marketing company, a California-based sales training company, and a website capable of reaching California consumers. *Id*. This Court did not even find the claim of general jurisdiction a close call, writing "[t]hese contacts fall well short or the 'continuous and systematic' contacts that the Supreme Court and this court have held to constitute sufficient 'presence' to warrant general jurisdiction." *Id*. The same conclusion is warranted here. In place of physical presence, Plaintiffs have cobbled together a collection of Tucows contracts with third-party vendors based in California, with the unremarkable observation that "California is the United States' largest Internet-using market" (Opposition, at 4) to ask this Court to hold Tucows accountable in California for all of its conduct anywhere in the world. On this basis, practically every Internet company would be susceptible to legal suit, on any claim, in California. This is not, and cannot be, the law.

### B. No Specific Jurisdiction

Plaintiffs do not dispute that they are a Massachusetts-based couple and that the current registrant of the domain name at issue is located in the United Kingdom. They do not dispute that the allegedly suspect domain name transfer at issue, from the Jenkins family to the current registrant,

3

was a transfer from a Virginia-based registrar, Network Solutions, Inc., to a Toronto, Canada-based registrar, Tucows. In fact, the Plaintiffs have previously argued to this Court (Docket No. 18-19), and this Court has accepted and ordered (Docket No. 21), that these same facts do not support either general or specific jurisdiction over the domain name registrant, Mortgages on Demand, Ltd., in this judicial district. On the law of the case alone, this Court should reject Plaintiffs' claim of specific jurisdiction. The only additional facts Plaintiffs allege here for Tucows, which were not also at issue in the previous motion, are the location of the domain name and the fact that Tucows registers domain names under accreditation by the Internet Corporation for Assigned Names and Numbers ("ICANN"). These will be addressed in turn.

The Plaintiffs' primary basis for their claim of specific jurisdiction is that the domain name MOD.COM is somehow "located" in this judicial district because Mountain View, California is the location of certain corporate offices of Verisign, Inc., the registry operator for the .COM top-level domain. In making this argument, however, Plaintiffs misuse a legal fiction from a now inapplicable statute, the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and fail to account for the actual operations of the entities involved in provisioning the MOD.COM domain name.

The ACPA, 15 U.S.C. §1125(d)(2)(D), allows a Plaintiff to establish jurisdiction over a domain name in certain narrowly prescribed circumstances via an *in rem* action "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." This provision was the original basis on which Plaintiffs invoked the jurisdiction of this Court. Plaintiffs' Original Complaint, filed June 13, 2007 (Docket No. 1), alleged only federal trademark infringement claims arising under the ACPA and relied on the presence of certain corporate offices of Verisign, Inc., the .COM registry operator, in California to claim jurisdiction. Unable or unwilling to offer proof of those original claims at a prove-up hearing on its request for a default judgment (*See*, Order re: Supplemental Briefing and/or Evidence, filed April 2, 2008, Docket No. 28), Plaintiffs abandoned the ACPA claims altogether in their First Amended Complaint ('FAC") (Docket No. 32). In so doing, Plaintiffs lost their ability to rely on the *in rem* provisions of the ACPA.

4

Even under the ACPA, it would take an expansive interpretation of the "is located" clause to find that Verisign's registry operations are located in California. Tucows' registrar operations connect to Verisign – operated computer systems in Virginia (First Eisner Decl., at ¶¶9-10) (Docket No. 38). Even Verisign self-identifies, in its .COM registration agreement with Tucows, as "a Delaware corporation, with a place of business located at 21345 Ridgetop Circle, Dulles, Virginia 20166." Suppl. Eisner Decl., at ¶15. Without the ACPA's legal fiction of "is located," however, Plaintiffs must establish – as a matter of *fact*, not legal fiction – that the domain name MOD.COM is located in California. As all the evidence makes clear, California is not implicated in any way in the registration of MOD.COM. If the physical location of MOD.COM is relevant at all, the uncontradicted facts are that only servers in Ontario and Virginia are involved in the administration of MOD.COM. Plaintiffs' reliance on other ACPA *in rem* cases that allow Verisign's corporate offices in Mountain View to suffice for purposes of the "is located" clause are irrelevant to the state law tort claims Plaintiffs make here.[2]

The second fact not previously raised in Plaintiff's motion for a finding of lack of personal jurisdiction is the relationship of Tucows to ICANN. ICANN, based in Marina Del Rey, California, is the private sector non-profit corporation tasked with overseeing the coordination of the Internet's Domain Name System. The ICANN Registrar Accreditation Agreement ("RAA") (http://www.icann.org/registrars/ra-agreement-17may01.htm) governs Tucows relationship *with ICANN*, not with any other party, including the Plaintiffs here. In fact, Section 5.10 of the RAA expressly provides: "No Third-Party Beneficiaries. This Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement, including any Registered Name Holder." The specific events described by Plaintiffs here are wholly unrelated to the ICANN-Tucows relationship governed by the RAA. In fact, under Plaintiffs theory of

---

[2] Even the holdings of other courts in California *in rem* ACPA cases are suspect as well, however, since *in rem* claims necessarily involve only one represented party. Tucows does not know, but believes it unlikely, that other Plaintiffs in ACPA *in rem* cases filed in California courts have apprised those courts that Verisign's registry operations are based in *Virginia*, not California, and that registrars writing domain name information to the Verisign registry connect to computers in *Virginia*, not California.

jurisdiction, each one of the hundreds of ICANN-accredited registrars, located anywhere in the world,[3] would be subject to jurisdiction in California by virtue of their accreditation contract.

On these facts and based on this Court's previous ruling, and the previous arguments of the Plaintiffs themselves, this Court cannot find that specific jurisdiction exists.

### C. No Consent to Jurisdiction

Just as Plaintiffs mistakenly rely on the *in rem* sections of a statute no longer at issue for their claim that MOD.COM "resides" in this judicial district, Plaintiffs also misuse similar ACPA provisions governing registrar certificates to make the claim that Tucows has consented to jurisdiction in this Court. For *in rem* actions, the ACPA provides for a special procedure by which a registrar can tender a registrar certificate to a Court in exchange for immunity from monetary or injunctive relief:

> (i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall –
>
> (I) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and
>
> (II) not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.
>
> (ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

15 U.S.C. §1125(d)(2)(D ). Here, on request of Plaintiffs' counsel, Tucows received and reviewed the Complaint filed in this action, which contained an ACPA *in rem* cause of action, and filed the appropriate registrar certificate (Docket No. 6). The necessity of the registrar certificate was tied

---

[3] A complete list of all ICANN-accredited registrars is on the ICANN website at http://www.icann.org/registrars/accredited-list.html. This list includes registrars based in every part of the world.

6

DEFENDANT TUCOWS, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Case No. C07-03112 JSW

directly to the *in rem* provisions of the ACPA. Now that Plaintiffs have abandoned their *in rem* claims, or any ACPA claims whatsoever, the legal effect of the registrar certificate is necessarily extinguished as well.

Moreover, a ruling that the tendering of a registrar certificate constitutes a general consent to jurisdiction for all purposes would have a chilling effect on the willingness of future registrars to provide such certificates. As the District Court of Massachusetts has observed with regard to *in rem* registrar certificates under 15 U.S.C. §1125(d)(2)(D), "the deposit of registration documents was designed to relieve registration authorities of the burdens of appearing in domain name dispute litigation by formalizing a procedure through which those authorities can simply deposit the disputed intangible in a manner not unlike interpleader." See, *Fleetboston Financial Corp. v. FleetBostonFinancial.com*, 138 F.Supp. 121, 126 (D. Mass. 2001). If successful, Plaintiffs' argument here would have the opposite effect. Far from relieving registration authorities from the burdens of involvement in hundreds of domain name trademark cases each year, registries and registrars would find themselves newly susceptible to unrelated tort claims in a myriad of courts around the country simply because they had deposited a registrar certificate for an *in rem* action.

Neither the language nor the purpose of the registrar certificate provisions of the ACPA supports the result advocated by Plaintiffs here. Plaintiffs cite no cases for their claim that an *in rem* registrar certificate constitutes a general consent to jurisdiction for unrelated claims, and both the statutory basis for the registrar certificate, as well as the opinion of other courts, supports a contrary conclusion.

### III.   CONCLUSION

This case has many infirmities and questionable pleadings. The Plaintiffs filed a trademark action without any trademark rights, a fact only made evident to the Court when Plaintiffs abandoned their original claims immediately upon a judicial request to present evidence. The case is proceeding in California, when Plaintiffs live and work in Massachusetts. Plaintiffs have chosen not to pursue in a proper court the entity they label a "Thief" in their First Amended Complaint, an entity that would be an indispensable party if this case were to proceed. Plaintiffs have spun their

jurisdictional arguments around completely to claim this Court has jurisdiction over an intermediary registrar, but not over the alleged "thief." These all add up to reveal a case without any grounding in the law, in which Plaintiffs apparently will plead anything in the hope of achieving by default, or compelling by the filing of costly litigation, a result to which they are not entitled on the merits. The twelve months this case has been proceeding have been a sanctionable waste of this Court's and now Tucows' time. It should not be allowed to proceed any further.

* * * * *

## REQUEST FOR EVIDENTIARY HEARING

Tucows believes it is possible for this Court to decide this motion in its favor on the basis of the pleading and supporting declarations. Nevertheless, to the extent this Court finds material facts in dispute, Tucows respectfully requests that this Court hold an evidentiary hearing on the personal jurisdiction questions now before the Court.

DATED: June 13, 2008

Respectfully submitted,

ADORNO YOSS ALVARADO & SMITH
A Professional Corporation


By:  /s/ Bret A. Fausett
Bret A. Fausett

Attorneys for Defendant TUCOWS, INC.