UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN JENKINS, *et al.*, | No. C-07-3112 JSW (EMC) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| ROBERT POOKE, *et al.*, | |
| Defendants. | **(Docket No. 79)** |

Plaintiffs Ann Jenkins and Ernest F. Jenkins, Jr. have filed suit against Defendants Robert Pooke and Kevin Dillon, alleging theft of the domain name mod.com. *See* Docket No. 50 (second amended complaint) ("SAC"). In January 2009, Plaintiffs voluntarily dismissed their claims against Mr. Dillon, leaving Mr. Pooke as the only remaining defendant. After Mr. Pooke failed to respond to the summons and complaint, his default was entered. *See* Docket No. 78 (notice of entry of default). Thereafter, Plaintiffs filed a motion for default judgment against Mr. Pooke, which the presiding judge, Judge White, referred to the undersigned for a report and recommendation. Mr. Pooke has not filed an opposition to Plaintiffs' motion, nor did he make any appearance at the hearing which this Court held on the motion on June 24, 2009.

Having considered Plaintiffs' motion for default judgment and accompanying submissions, Plaintiffs' supplemental briefs, the oral argument of Plaintiffs' counsel, and all other evidence of record, the Court hereby recommends that the motion be **GRANTED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

In their second amended complaint, Plaintiffs allege as follows.

1 Plaintiffs are citizens of Massachusetts. *See* SAC ¶ 4. In December 2006, a company by the name of Modular Services, LLC transferred ownership of the domain name mod.com to Plaintiffs. *See* SAC ¶ 18. Until January 2007, Plaintiffs maintained an Internet website at mod.com. *See* SAC ¶ 18.

On or about January 19, 2007, Mr. Pooke, a resident of Great Britain, misappropriated the domain name from Plaintiffs. The theft was effectuated by the following means. Mr. Pooke unlawfully accessed Plaintiffs' e-mail account. *See* SAC ¶¶ 20-21. Having gained such access, Mr. Pooke contacted Network Solutions, Inc., which is the registrar for the mod.com domain name, and asked it to change the user name and password for Plaintiffs' Network Solutions account. *See* SAC ¶ 21. In response, Network Solutions sent an automatic email to Plaintiffs' e-mail account, which enabled Mr. Pooke -- who again unlawfully accessed Plaintiffs' e-mail account -- to change the user name and password for Plaintiffs' Network Solutions account. *See* SAC ¶ 21.

After changing the user name and password, Mr. Pooke then began the process of transferring mod.com to an account that he had created with another registrar. *See* SAC ¶¶ 22, 24. Following the transfer, Mr. Pooke changed the registration information for mod.com with the new registrar. *See* SAC ¶ 25. Accordingly, Mr. Pooke is now listed as the current registrant of mod.com. *See* SAC ¶ 25.

In June 2007, Plaintiffs initiated the instant lawsuit, seeking to regain ownership of the domain name mod.com. *See* Docket No. 1 (complaint). Plaintiffs pled a cause of action for cybersquatting *in rem*. Plaintiffs filed a motion for default judgment on this claim, which the presiding judge referred to the undersigned for a report and recommendation. This Court had reservations about the propriety of a default judgment on the cybersquatting claim and therefore asked Plaintiffs to provide supplemental briefing. *See* Docket No. 28 (order, filed on 4/2/2008). Thereafter, Plaintiffs withdrew their motion for default judgment and filed an amended complaint, in which they asserted new causes of action. *See* Docket No. 32 (first amended complaint, filed on 4/22/2008).

Subsequently, Plaintiffs filed a second amended complaint, which is the operative complaint. In this complaint, Plaintiffs assert claims for conversion and trover. As noted above, Plaintiffs

2

initially named both Mr. Pooke and another individual, Mr. Dillon, as Defendants but eventually dismissed Mr. Dillon, leaving Mr. Pooke as the only remaining Defendant in the case. The only relief sought in this complaint (as in the original complaint) is the return of ownership of the domain name mod.com.

In February 2009, the presiding judge gave Plaintiffs leave to serve the summons and complaint on Mr. Pooke, a resident of Great Britain, by alternative means, more specifically, via e-mail, international mail, and international courier. *See* Docket No. 71 (order). After Mr. Pooke failed to respond to the complaint, the Clerk of the Court entered his default on March 20, 2009. *See* Docket No. 78 (notice of entry of default). Plaintiffs then moved for default judgment against Mr. Pooke, which the presiding judge referred to the undersigned for a report and recommendation. A copy of this motion was served on Mr. Pooke. *See* Docket No. 82 (proof of service).

After receiving Judge White's referral, this Court asked Plaintiffs to provide supplemental briefing on the issue of whether there is personal jurisdiction over Mr. Pooke in this forum. *See* Docket Nos. 86, 91 (orders, filed on 5/4/2009 and 6/3/2009). Plaintiffs served Mr. Pooke with copies of the Court's orders requesting supplemental briefing as well as copies of the supplemental briefs that were filed. *See* Docket Nos. 87, 90, 92, 94 (proofs of service). Mr. Pooke was given notice of the hearing on Plaintiffs' motion for default judgment by virtue of this service. *See* Docket No. 92 (proof of service).

## II. DISCUSSION

A. Service of Process

"To grant or deny a default judgment, a court must first 'assess the adequacy of the service of process on the party against whom default is requested.'" *Maniar v. Crompton Kennedy Fine Wine Purveyors*, No. C06-02537 MJJ, 2007 WL 3144444, at *2 (N.D. Cal. Oct. 24, 2007). As noted above, in the instant case, the presiding judge authorized alternative service of process on Mr. Pooke. *See* Docket No. 71 (order, filed on 2/17/2009). Plaintiffs have provided a proof of service establishing compliance with the alternative means permitted by Judge White. *See* Docket No. 72 (proof of service). Accordingly, the Court finds that service of process on Mr. Pooke was proper.

B.      Personal Jurisdiction

Before turning to the merits of Plaintiffs' motion for default judgment, the Court must first address the issue of personal jurisdiction, a subject on which it asked Plaintiffs to provide supplemental briefs. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999) ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction."); *Dennis Garberg & Assocs. v. Pack-Tach Int'l Corp.*, 115 F.3d 767, 722 (10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case."). For a court to assert personal jurisdiction over a defendant, due process requirements must be met. Due process requires that a defendant have "minimum contacts with the jurisdiction 'such that the maintenance of the suit [in the forum] does not offend traditional notions of fair play and substantial justice.'" *Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298, 307 (1992). The Court had concerns about personal jurisdiction in the instant case because the contacts that Mr. Pooke had with California seem to be limited -- Plaintiffs are citizens of Massachusetts (not California), Mr. Pooke is a resident of Great Britain, and the theft of the domain name essentially occurred in cyberspace. In their supplemental papers, Plaintiffs argue that there is personal jurisdiction based on the following five contacts with California:

(1)     Plaintiffs' e-mail address, which Mr. Pooke unlawfully accessed to effectuate the theft of the domain name, is maintained by Bigfoot Entertainment Ltd., which is a California corporation headquartered in California. *See* Docket No. 89 (Kronenberger Decl. ¶¶ 7-8).

(2)     Mr. Pooke stole and used the credit card number of a California resident to transfer the domain name from Network Solutions to the new registrar. *See* Docket No. 89 (Kronenberger Decl. ¶ 5).

///
///
///
///
///

4

1  (3) For mod.com's WHOIS record[1], Mr. Pooke listed an e-mail address (chorecom@gmail.com) that is owned by Google, Inc., a California corporation. *See* Docket No. 89 (Kronenberger Decl. ¶ 9 & Ex. D) (response to Interrogatory No. 25).

(4) For mod.com's WHOIS record, Mr. Pooke listed a California-based company (123CheapDomains.com) as the technical contact. *See* Docket No. 89 (Kronenberger Decl., Ex. D) (response to Interrogatory No. 25).

(5) The official domain name registry for mod.com is VeriSign, Inc., a California corporation located in California. *See* Docket No. 89 (Kronenberger Decl. ¶¶ 2-4).

### 1. Legal Standard

Where, as here,

> no federal statute governs personal jurisdiction, the district court applies the law of the forum state. California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant-general jurisdiction and specific jurisdiction.

*Boschetto v. Hansing*, 539 F.3d 1011, 1015-16 (9th Cir. 2008). In the instant case, Plaintiffs do not make any claim that there is general jurisdiction over Mr. Pooke in this forum. Accordingly, Plaintiffs need only make a prima facie showing of specific jurisdiction in order to proceed with their motion for default judgment. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002) (noting that, where there is no evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction).

In the Ninth Circuit,

> a three-part test [is used] to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or

---

[1] "WHOIS records are maintained by domain name registrars that make domain name contact and ownership information searchable and available to the public." *Express Media Group, LLC v. Express Corp.*, No. C 06-03504 WHA, 2007 WL 1394163, at *1 (N.D. Cal. May 10, 2007).

> perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable.

*Boschetto*, 539 F.3d at 1016.

### 2. Purposeful Direction

For cases sounding in tort, as here, a purposeful direction analysis, rather than a purposeful availment analysis, is used. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Purposeful direction is evaluated under the three-part "effects" test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under the effects test "'the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

In the instant case, the first prong of the effects test has clearly been satisfied. Accepting the allegations in the complaint as true, Mr. Pooke committed an intentional act by unlawfully accessing Plaintiffs' e-mail account and then transferring the domain name mod.com to himself.

The second prong of the effects test is more complicated. In most cases, a plaintiff files suit in the forum in which he or she resides. In such a circumstance, courts have found that there is express aiming at the forum state because "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). But the instant case is atypical: Plaintiffs reside in Massachusetts but have not filed suit there and instead have filed suit in California.

The fact that Plaintiffs reside in Massachusetts does not mean that the second prong of the effects test cannot be satisfied. There is no authority holding that the express aiming requirement may be satisfied only where the plaintiff resides in the forum state. In fact, authority is to the

6

1  contrary. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (stating that plaintiff's
2  residence in the forum state is not a requirement for personal jurisdiction and that "lack of residence
3  will not defeat jurisdiction established on the basis of defendant's contacts"); *Resnick v. Rowe*, 283
4  F. Supp. 2d 1128, 1137 (D. Haw. 2003) (stating there is no requirement that "a plaintiff be a forum
5  resident to satisfy the 'express aiming' requirement"; finding requirement satisfied in case under
6  consideration based on misrepresentations made by nonresident defendant to nonresident plaintiff in
7  forum state and misrepresentations made by nonresident defendant to third-party resident).

8        Ultimately, the express aiming requirement simply underscores that there must be purposeful
9  direction by the defendant affecting the forum state in order for there to be specific jurisdiction.
10 Thus, the critical inquiry under the second prong of the effects test is whether the defendant's
11 tortious activity was directed at the forum state. Here, the Court finds that Mr. Pooke's tortious
12 conduct was directed at California because he unlawfully accessed Plaintiffs' e-mail account, which
13 is maintained by a California corporation headquartered in California, to effectuate the theft of
14 mod.com. That Mr. Pooke likely did not know that the corporation was based in California is not
15 dispositive. The Court finds persuasive the reasoning in *Facebook, Inc. v. ConnectU LLC*, No. C
16 07-01389 RS, 2007 WL 2326090 (N.D. Cal. Aug. 3, 2007), that "the technology of the Internet can,
17 in at least some cases, provide a means whereby specific, targeted, conduct may be 'expressly
18 aimed' at a particular individual or entity, despite the fact that the person engaging in the conduct
19 may not know the geographic location of the individual or entity." *Id.* at *5. As in *Facebook, Inc.*,
20 the fact that the Internet provided Mr. Pooke a tool by which he could carry out his wrongful
21 conduct directed at Plaintiffs through their email account without first making efforts to learn of its
22 geographic location "is not a reason to excuse [him] from jurisdiction to which [he] would otherwise
23 be subject." *Id.* Mr. Pooke engaged not in an "untargeted" act, but one "purposefully directed at a
24 given plaintiff," the crucial distinction in the prior (pre-Internet) case law defining the purposeful
25 direction test. *Id.* To adhere mechanically to an absolute requirement that a tortious defendant know
26 the geographic location of situs of injury in the context of Internet transgressions as alleged here
27 could have the perverse effect of immunizing such conduct; in many cases, it will be virtually
28

impossible to prove the defendant was aware of the geographic locations of a particular server, thus effectively defeating jurisdiction in *any* forum.

The Court also finds express aiming based on the fact that VeriSign, the registry for the domain name mod.com, is located in California. Given the role of a registry in the creation and maintenance of a domain name,[2] the Court concludes that when Mr. Pooke, as alleged in the complaint, intentionally stole the domain name mod.com, his tortious conduct was implicitly directed at the registry for mod.com. *Cf. Office Depot v. Zuccarini*, No. C 06-mc-80356 SI, 2007 WL 2688460, at *3 (N.D. Cal. Sept. 10, 2007) (noting that, under the federal Anticybersquatting Consumer Protection Act, a domain name is deemed to exist in the location of the registry as well as the registrar; relying on the Act to find that the defendant's domain names were located at VeriSign, the domain names' registry, for purposes of a placing a levy upon the domain names to enforce a money judgment). Similar to above, that Mr. Pooke may not have known that VeriSign is geographically located in California is not dispositive. *See Facebook*, 2007 WL 2326090, at *5.

As for the third prong of the effects test, the Court finds that it is satisfied for reasons similar to above -- *i.e.*, in engaging in the tortious activity, Mr. Pooke knew that it was likely that harm would be suffered in the state where Plaintiffs' e-mail account was maintained and where the registry for mod.com is located: California. *See also Doe v. Geller*, 533 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (stating that "there is no presumption that a plaintiff is harmed in his domiciliary only"); *cf. Resnick*, 283 F. Supp. 2d at 1137-39 (finding the third prong of the effects test satisfied

---

[2] As explained by this Court in another case:
> A domain name is created when it is registered with the appropriate registry operator. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain[] names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's [top-level domain] servers to determine whether the name is available, and register available domain names on behalf of registrants. As such, registrars necessarily need access to the registry maintained by the registry operators.

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 464 F. Supp. 2d 948, 952 (N.D. Cal. 2006), *rev'd*, No. 07-16151, 2009 U.S. App. LEXIS 12514 (9th Cir. June 5, 2009).

where a plaintiff from Oregon sued defendants from California in Hawaii for misrepresentations related to a real estate transaction in Hawaii).

Because all three prongs of the effects have been met, the Court finds that purposeful direction for purposes of the specific jurisdiction test has been established.[3]

### 3. Arising Out Of

The next inquiry under the specific jurisdiction test is whether the claim at issue is one that arises out of or relates to the defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016. To satisfy this requirement, Plaintiffs must show that, but for Mr. Pooke's forum-related conduct, the injury would not have occurred. *See Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051-52 (9th Cir. 1997)). This requirement is easily met. Here, Mr. Pooke's forum-related conduct consisted of the unlawful accessing of Plaintiffs' e-mail in order to steal the domain name mod.com and effecting its registration, which was maintained by the VeriSign registry. Clearly, but for this conduct, Plaintiffs would not have been injured by Mr. Pooke's act of conversion.[4]

### 4. Reasonableness

Finally, in order for there to be specific jurisdiction, the exercise of jurisdiction must be reasonable. Although typically a defendant has the burden of coming forward with a compelling case that the exercise of jurisdiction would not be reasonable, *see Boschetto*, 539 F.3d at 1016, the Court is still obligated to consider this issue since it has "an affirmative duty to look into its jurisdiction." *Tuli*, 172 F.3d at 712. *See, e.g.*, *Mwani v. bin Laden*, 417 F.3d 1, 14 (D.C. Cir. 2005) (addressing the reasonableness of exercising jurisdiction in default judgment context where the defendant did not make an appearance). Seven factors are considered in making the reasonableness determination:

---

[3] The Plaintiffs also allege three other contacts with the forum state: (1) Mr. Pooke used a California resident's credit card number and address to register mod.com; (2) Mr. Pooke used a Google, Inc. email address to effect the transfer of mod.com; and (3) Mr. Pooke listed a California-based company as the technical contact to register mod.com. These acts, though instrumental, were not as proximate to the alleged conversion as the contacts discussed above.

[4] Although not necessarily related as a proximate cause, the other California acts by Mr. Pooke (discussed above at note 3), contributed to the challenged transaction.

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Taking into account the above factors, the exercise of jurisdiction would be reasonable. For example, the extent of Mr. Pooke's purposeful interjection into the forum's affairs is substantial given that he deliberately gained unauthorized access to Plaintiffs' e-mail address in order to effectuate the theft of the domain name. Although there would undoubtedly be a burden on Mr. Pooke, a resident of Great Britain, to litigate in this forum, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1109 (9th Cir. 1988). Furthermore, aside from Mr. Pooke himself, the critical evidence largely appears to be in the United States and possibly Canada (where Tucows, the current registrar and a Pennsylvania corporation, has its principal place of business). *See Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (stating that the "efficient resolution" factor "focuses on the location of the evidence and witnesses").

The Court acknowledges the possibility of conflict with the sovereignty of Great Britain, *see Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (noting that "litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist"), but this factor is "not controlling," *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003). There has been no showing that this Court's exercise of jurisdiction over a claim of theft of a domain name contravenes any law of Great Britain. Moreover, California does have an interest in the litigation even though Plaintiffs are not forum residents because the tort here was essentially effected in California through the unlawful accessing of Plaintiffs' e-mail account and the subsequent transfer of the domain name, maintained by the California-based registry. *See Keeton*, 465 U.S. at 776 (noting that "[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory . . . because torts involve wrongful conduct which a state

seeks to deter, and against which it attempts to afford protection") (internal quotation marks omitted). California has an interest in protecting the integrity of business and property maintained here. *Cf. Resnick*, 283 F. Supp. 2d at 1141 ("[E]ven when the plaintiff is not a [forum state] resident, [the forum state] has some interest, however slight, in preventing torts and breaches of contract in [the forum state]."). Also, California residents who were users of the site have likely been effected by the theft to the extent that they are no longer able to access the mod.com website as Plaintiffs originally maintained it. Finally, as noted above, Mr. Pooke is alleged to have engaged in a number of other acts affecting California in carrying out his scheme. The Plaintiffs allege that Mr. Pooke: (1) stole and used a California resident's credit card and address to register mod.com; (2) listed a California-based company and its California address as the technical contact for mod.com; and (3) used an email address from Google, Inc., a California-based company, to register the domain name. Some of these contacts implied Mr. Pooke's knowledge of a California connection. Thus, it should not come as a surprise that he would be haled into a California court.

The only factor that counsels against the exercise of jurisdiction is that Plaintiffs have not established that there is no alternative forum. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (noting that "[t]he plaintiff bears the burden of proving the unavailability of an alternative forum"). However, "this single factor [does] not trump the other factors so as to compel a different conclusion." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1175 n.5 (9th Cir. 2006). In short, the Court cannot say that this factor alone creates a compelling case not to exercise jurisdiction.

C. *Eitel* Analysis

Because Plaintiffs have made a prima facie showing of specific jurisdiction, the Court may now turn to the merits of their motion for default judgment. As noted above, a default was entered against Mr. Pooke on March 20, 2009, based on his failure to answer the complaint. *See* Docket No. 78 (notice of entry of default). Upon entry of default, a party may move for a default judgment.[5]

---

[5] A default judgment pursuant to Rule 55 may be entered so long as the defendant is not an infant or incompetent person or a person in military service. See Fed. R. Civ. P. 55(b)(1); 50 App. U.S.C. § 521. There is no evidence of record to indicate that Mr. Pooke falls under any of these categories.

11

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

In the instant case, the majority of factors weigh in favor of a default judgment. For example, if the motion for default judgment were to be denied, then Plaintiffs would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Plaintiffs appear to have tried to resolve the dispute with Mr. Pooke informally but to no avail. *See* Docket No. 81 (Ernest Jenkins Decl. ¶ 8 & Ex. B) (e-mail exchange between Mr. Jenkins and Mr. Pooke, dated 4/20/2007). Also, the relief being sought in the action is appropriate; Plaintiffs are not asking for any monetary damages but rather seek only return of ownership of the domain name mod.com, which was unlawfully transferred. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Moreover, because Mr. Pooke has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts, and there is no indication that Mr. Pooke's default was due to excusable neglect. The Court further notes that Mr. Pooke has not made any attempt to oppose the motion for default judgment (even though he was served with

the motion, not to mention orders issued by this Court and supplemental papers filed by Plaintiffs), nor did he make an appearance at the hearing on the motion held by this Court on June 24, 2009.

The final consideration for the Court is whether Plaintiffs have stated a claim on which they may recover. *See Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.Cal. 2003) (explaining that this is what the second and third *Eitel* factors basically require). In their second amended complaint, Plaintiffs plead a cause of action for conversion and trover based on the unauthorized transfer of mod.com. "Trover is [simply] the technical name for an action for conversion." *Taylor v. Forte Hotels International*, 235 Cal. App. 3d 1119, 1124 n.3 (1991); *see also* 14A Cal. Jur. 3d Conversion § 2 ("Strictly speaking, 'trover' is the name of the action and 'conversion' the name of the tort involved. In modern usage, however, the terms are used interchangeably as designations of the tort, as well as of the action for damages based on that tort.").

> Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are [(1)] the plaintiff's ownership or right to possession of the property at the time of the conversion; [(2)] the defendant's conversion by wrongful act or disposition of property rights; and [(3)] damages.

*Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996).

Each of these elements has been adequately pled in the instant case. In their second amended complaint, Plaintiffs allege that (1) they owned the domain name mod.com at the time of the theft, *see* SAC ¶ 18; (2) Mr. Pooke transferred the domain name to himself by, *inter alia*, unlawfully accessing Plaintiffs' e-mail account, *see* SAC ¶¶ 20-25; and (3) Plaintiffs sustained harm as a result because the domain name has value. *See* SAC ¶¶ 5, 18 (alleging that the domain name mod.com has value in excess of $75,000 and that, during Plaintiff's ownership, thousands of Internet users visited the website each month).[6]

---

[6] The Court notes that, even if Mr. Pooke was not the person who stole mod.com from Plaintiffs, and instead was an innocent third-party purchaser of the domain name, he would not be insulated from liability. *See CRS Recovery, Inc. v. Laxton*, 2008 WL 4427944, at *6 ("[M]ere possession of a domain name that was involuntarily transferred from the rightful owner is sufficient to convey liability for conversion."); *Naftzger v. Am. Numismatic Soc'y*, 42 Cal. App. 4th 421, 432 (1996) ("Stolen property remains stolen property, no matter how many years have transpired from the date of the theft. Moreover, a thief cannot convey valid title to an innocent purchaser of stolen property . . . .").

Because, as discussed above, the *Eitel* factors largely weigh in Plaintiffs' favor, the Court recommends that their motion for default judgment be granted.

D.  Relief

Having concluded that a default judgment is appropriate, the final issue for the Court is what relief should be awarded to Plaintiffs. Plaintiffs seek only return of ownership of the domain name mod.com, not any damages. Recovery of stolen property is an appropriate remedy where there has been a conversion. *See, e.g.*, *Express Media Group, LLC v. Express Corp.*, No. C 06-03504 WHA, 2007 WL 1394163, at *4-6 (N.D. Cal. May 10, 2007) (awarding specific recovery of a converted domain name; relying on Cal. Civ. Code §§ 3379-3380); *CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 4427944, at *8 (N.D. Cal. Sept. 26, 2008) (awarding specific recovery of a converted domain name; relying on Cal. Civ. Code §§ 3379-3380); *see also* Cal. Civ. Code § 3380 (providing that "[a]ny person having the possession or control of a particular article of personal property, of which he is not the owner, may be compelled to specifically deliver it to the person entitled to immediate possession"). Accordingly, the Court recommends that the presiding judge issue an order requiring Mr. Pooke to transfer registration and control of mod.com back to Plaintiffs.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment be granted and that Plaintiffs be awarded the relief specified above.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: July 13, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge